# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv248

| | |
|---|---|
| ALDEN JEROME HARDEN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ) | |
| GERALD BRANKER, Warden, ) | |
| Central Prison ) | |
| Raleigh, North Carolina, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court upon Petitioner Alden Jerome Harden's Motion to Hold his Petition for Writ of Habeas Corpus in Abeyance. [Doc. 65]. In his motion, Harden urges that the Court stay determination of his habeas petition pending the state court's resolution of his second Motion for Appropriate Relief (hereinafter "MAR").

## PROCEDURAL HISTORY

In 1994, Harden was convicted of two counts of first-degree murder and sentenced to death for killing Charlotte-Mecklenburg Police Officers Anthony Nobles and John Burnette. He appealed his convictions and sentences. Among his claims was that the State had used its peremptory

challenges in a racially discriminatory fashion in violation of Batson v. Kentucky, 476 U.S. 79, 109 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it struck veniremen Shannon Smith and Linda Stein.[1] (State's Ex. D: Def.-Appellant's Br. 110-118). The North Carolina Supreme Court found no error, and the United States Supreme Court denied certiorari review. State v. Harden, 344 N.C. 542, 476 S.E.2d 658 (1996), cert. denied, 520 U.S. 1147, 117 S.Ct. 1321, 137 L.Ed.2d 483 (1997).

Following a protracted state post-conviction process, Harden filed a Petition for Writ of Habeas Corpus in the Federal District Court pursuant to 28 U.S.C. § 2254. In his Petition, Harden seeks review of the North Carolina Supreme Court's adjudication of his Batson claim. As he did on appeal, Harden challenges only the strikes of Smith and Stein. [Doc. 1: Pet. 41-46].

On February 19, 2009, Harden filed a second MAR in state court claiming that the State had used its peremptory challenges in a racially discriminatory fashion during jury selection in violation of Batson. [Doc. 66:

---

[1] In Batson v. Kentucky, 476 U.S. 79, 96-98, 109 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court established a three-pronged test to determine whether a party purposefully exercised its peremptory strikes in a racially discriminatory manner.

Mem. In Supp. Of Abeyance Mot. Ex. B]. In addition to offering new arguments with respect to the strikes of Smith and Stein, Harden, for the first time since trial, challenges the State's removal of jurors Alfred Morrison, Kennith Brown, and Gelnice Horsley. Id. at 13-32.

On February 27, 2009, Harden filed the instant motion to hold consideration of his habeas petition in abeyance pending resolution of his second MAR. [Doc. 65]. The State filed a Response opposing the motion [Doc. 69], and Harden filed a Reply [Doc. 70].

## DISCUSSION

In Rhines v. Weber, the Supreme Court held that federal district courts retain their discretion to stay federal habeas proceedings but warned that staying federal habeas proceedings too frequently "has the potential to undermine [the Anti-Terrorism and Effective Death Penalty Act's] twin purposes" of comity and finality. 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). The Court indicated that a stay is not justified where it will only result in further delay. See id. at 277-78, 125 S.Ct. 1528 (stating that "petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review"). A stay may be justified, however, when a petitioner "run[s] the risk of forever losing [his]

opportunity for any federal review of [his] unexhausted claims." Id. at 275, 125 S.Ct. 1528.

Here, Harden does not seek to "stay and abey" his habeas petition so that he can exhaust claims raised therein in state court. Indeed, Harden acknowledges in his petition that he raised his <u>Batson</u> claim on direct appeal and that the North Carolina Supreme Court denied it on the merits. That Harden seeks to raise a new <u>Batson</u> claim in state post-conviction court with respect to veniremen Morrison, Brown and Horsley does not render the <u>Batson</u> claim raised in his habeas petition unexhausted. Instead, Harden, without acknowledging the unexhausted portions of his second MAR, contends that this Court should stay consideration of his petition because of an alleged change in North Carolina law as articulated in <u>State v. Barden</u>, 362 N.C. 277, 658 S.E.2d 654 (2008) (<u>Barden II</u>).

In <u>Barden I</u>, the North Carolina Supreme Court held that the trial court had erred when it found that Barden had not established a <u>prima facie</u> case of purposeful discrimination under <u>Batson</u>. 356 N.C. 316, 345, 572 S.E.2d 108, 128 (2002) (<u>Barden I</u>). The Court remanded the case to the trial court with instructions to hold a hearing on steps two and three of the <u>Batson</u> framework. Id. The trial court held a hearing in 2003 and

thereafter denied Barden's Batson claim. Barden II, 362 N.C. at 279, 658 S.E.2d at 655. Barden appealed, and in Barden II, the North Carolina Supreme Court remanded the Batson claim for another hearing. The trial court was instructed to receive additional evidence from the State and to analyze the voir dire responses of a specific African American juror who was struck and a specific white juror who was accepted by the State. The trial court was instructed further to analyze that evidence in light of Snyder v. Louisiana, -- U.S. --, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), and Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Harden contends that by remanding Barden's Batson claim for a second hearing in light of Snyder, Collins, and Miller-El, the North Carolina Supreme Court recognized that it had been misapplying Batson.

This argument fails as a basis for holding Harden's habeas petition in abeyance. As an initial matter, Snyder, Collins, and Miller-El do not constitute new law. See Golphin v. Branker, 519 F.3d 168, 186 (4th Cir. 2008) ("Miller-El did not alter Batson claims in any way."). Consequently, this Court is bound to apply Batson and all of its progeny, including Snyder, Collins, and Miller-El, to its review of the North Carolina Supreme Court's

adjudication of Harden's habeas claim. Indeed, in his habeas petition, Harden argues that the state appellate court's adjudication of his Batson claim was contrary to or an unreasonable application of Miller-El.

Second, the Barden II Court did not announce a new rule of law or refine a previous interpretation of law. It merely issued a mandate to a single lower court in a case on direct appeal. When it did so, the court was not taking the position that Snyder, Collins, and Miller-El actually affected the outcome of Barden's claim. See U.S. v. M.C.C. of Florida, Inc., 967 F.2d 1559, 1562 (11th Cir. 1992) (discussing the parameters of the mandate when a superior court remands for further consideration in light of a new legal decision). Instead, it was instructing the trial court to make that determination. See id.

Granting Harden's motion would mean further delay of an already sixteen-year-old case. He has provided no compelling argument to outweigh AEDPA's purposes of finality and comity or that would justify abeyance.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Harden's Motion to Hold the Petition for Writ of Habeas Corpus in Abeyance [Doc. 65] is **DENIED**.

Signed: September 9, 2009

Martin Reidinger
United States District Judge