# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv248

| | |
|---|---|
| ALDEN JEROME HARDEN,<br><br>    Petitioner,<br><br>v.<br><br>GERALD BRANKER, Warden,<br>Central Prison<br>Raleigh, North Carolina,<br><br>    Respondent. | ORDER |

This matter is before the Court upon Petitioner Alden Jerome Harden's Motion to Expand the Record. [Doc. 38].

## PROCEDURAL HISTORY

In 1994, Harden was convicted of two counts of first-degree murder and sentenced to death for killing Charlotte-Mecklenburg Police Officers Anthony Nobles and John Burnette. He appealed his convictions and sentences. The North Carolina Supreme Court found no error, and the United States Supreme Court denied certiorari review. State v. Harden, 344 N.C. 542, 476 S.E.2d 658 (1996), cert. denied, 520 U.S. 1147, 117 S.Ct. 1321, 137 L.Ed.2d 483 (1997).

Following a protracted state post-conviction process, Harden filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the Federal District Court on June 13, 2006. Subsequent pleadings were filed by both Harden and Respondent. On August 6, 2008, Harden filed the Motion to Expand the Record that is the subject of this Order. [Doc. 38]. In it, he seeks to expand the federal habeas record to include juror questionnaires from his trial and an affidavit that he contends is relevant to Claim I of his habeas petition. On November 26, 2008, Respondent filed a Response to Harden's Motion to Expand the Record, opposing it in part. [Doc. 56]. On January 12, 2009, Harden filed a Reply. [Doc. 63].

## DISCUSSION

### A. Legal Standard

Harden's motion to expand the record is governed by Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." When a petitioner seeks to introduce evidence pursuant to Rule 7, he must meet the same conditions prescribed by § 2254(e)(2) for obtaining an evidentiary hearing. See Holland v. Jackson, 542 U.S. 649, 652-53, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004) (per curiam).

Under § 2254(e)(2)(A), "[a] habeas petitioner must develop the factual basis of his claim in the state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim relies upon a new, retroactive law, or due diligence could not have previously discovered the facts." Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir. 2005). In the context of a Rule 7 motion, this means that in order to expand the record, Harden must show that the evidence he now seeks to add to the federal habeas record was before the state court when it adjudicated his claim or that he made diligent efforts to put such evidence before the state court. Bradshaw v. Richey, 546 U.S. 74, 79, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (holding that federal appellate court erred when it relied on evidence that was not properly presented to the state courts without first determining whether the habeas petitioner had met the § 2254(e)(2) criteria); Williams v. Taylor, 529 U.S. 420, 429-32, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Alternatively, Harden must show that the evidence he is seeking to add could not have been discovered previously through due diligence and that the evidence clearly and convincingly establishes that but for constitutional error, no reasonable factfinder would have found him guilty. See Williams, 529 U.S. at 430-31, 120 S.Ct. 1479; 28 U.S.C. § 2254(e)(2)(B).

## B. Juror Questionnaires

Harden seeks to expand the record to include the juror questionnaires from his trial. He contends that the questionnaires are relevant to Claim VI of his habeas petition in which he alleges that his right to be tried by a jury selected without regard to race was violated by the prosecutor's discriminatory use of peremptory challenges, citing Batson v. Kentucky, 476 U.S. 79, 109 S.Ct. 1712, 90 L.Ed.2d 69 (1986). [Doc. 38-1 at 2-5].

Respondent concedes that the questionnaires were before the North Carolina Supreme Court when it adjudicated Harden's Batson claim and, therefore, does not oppose Harden's motion to expand the record to include them. [Doc. 56 at 7]. Respondent has provided the Court a copy of a memo from the Clerk of the Supreme Court of North Carolina to Harden's appellate counsel documenting that the questionnaires were before the appellate court when it considered Harden's direct appeal. [See Doc. 77].

Harden appears to have met the requirements of § 2254(e)(2) with respect to his motion to expand the record to include the juror questionnaires from his trial. Therefore, the record will be expanded to include those questionnaires.

## C. Sturdivant Affidavit

The second piece of evidence that Harden wishes to add to the federal habeas record is an Affidavit of James Sturdivant. [Sturdivant Aff., Doc. 41-9] Harden contends that Sturdivant's Affidavit relates to his habeas claim that the State withheld impeachment evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1] [Doc. 38-1 at 5-9].

In Claim I of his habeas petition, Harden asserts that Frank Pate ("Pate"), the four-year-old witness to the shootings of Officers Nobles and Burnette, made at least nine undisclosed statements to an Assistant District Attorney assigned to Harden's case. [Doc. 1 at ¶¶ 22, 30]. Harden bases this assertion on the fact that Pate's testimony at trial allegedly was "materially different" from the two statements he gave to police in the 48 hours after the shootings.[2] Because of the alleged difference between the disclosed statements and the testimony, Harden concludes that Pate must have made intervening, "evolving" statements under the coaching of police and prosecutors.

---

[1] In Brady v. Maryland, the United States Supreme Court held that the prosecution deprives a criminal defendant of due process when it suppresses evidence that is "favorable to an accused . . . where that evidence is material either to guilt or punishment . . . ." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[2] These two statements were provided to the defense prior to trial.

5

At the MAR evidentiary hearing, Harden called Dr. Marc A. Lindberg, who testified that the only way to explain the alleged differences between Pate's initial statements to police and his testimony was that the later was confabulated[3] by Pate or was coached or suggested. [State Ex. L: MAR Tr. at 64:13-15, 80:11-17, 89:17-90:2, 91:8-11] (manually filed). After considering Dr. Lindberg's testimony and other evidence, the MAR court found as a matter of fact that Harden could not prevail on his Brady claim because he could not show that Pate had made statements of material fact to the State other than the two given to police within 48 hours of the murders. [State Ex. M: Order Denying MAR at 46 ¶13] (manually filed). Harden contends that Sturdivant's Affidavit, which describes purported meetings between police, lawyers, and Pate at both Pate's home and at the police station,[4] corroborates Dr. Lindberg's conclusion.

---

[3]To "confabulate" is to "replace fact with fantasy unconsciously in memory." The American Heritage College Dictionary 291 (3d ed. 2000).

[4]Sturdivant's Affidavit asserts that he attended many meetings between Frank Pate and the police; that sometimes the police and prosecutors came to the Pate home to meet with Pate; when Pate was not interviewed at home, Sturdivant and Pate's mother took him to the police station; Sturdivant went to four of the meetings at the police station; the meetings at the police station lasted from one to four hours; during the meetings, police and "lawyers" had Pate practice saying, over and over, what he saw on the day that Officers Nobles and Burnette were shot; the officers and "lawyers" took notes during the meetings with Pate; Sturdivant was not present for five to seven meetings that Pate had with police and "the attorneys;" sometimes those meetings were at the courthouse, and sometimes they were at the police station; Pate's mother would tell Sturdivant what happened at the meetings that he did not attend; after one meeting, Pate's mother told Sturdivant that "the lawyers" had put Pate on the witness stand in the courtroom to practice his testimony; and Pate's mother told Sturdivant that "she thought

6

Sturdivant's Affidavit was not executed until July 28, 2008, and has never been presented in state court. In Williams, the Court explained that the opening clause of § 2254(e)(2), prohibiting an evidentiary hearing if the petitioner "failed to develop the factual basis" of his claim, is a "conditional clause" which must be satisfied before the remainder of § 2254(e) comes into play. 529 U.S. at 431, 120 S.Ct. at 1487. "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432, 120 S.Ct. at 1488. In other words, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." Id. at 435, 120 S.Ct. at 1490. If Harden establishes that he was diligent in attempting to get the information in the Sturdivant Affidavit before the state court, he does not have to satisfy the remaining provisions of § 2254(e)(2) in order for the record to be expanded.

Harden asserts that he was diligent in his attempts to locate Sturdivant prior to filing his MAR. By way of proof, he has attached to his motion the records of two private investigators that purport to show their unsuccessful attempts to locate Sturdivant prior to and during post-

---

they were coaching him into saying what they wanted him to say." [Sturdivant Aff., Doc. 41-9 at ¶¶ 3-6].

conviction proceedings. [Docs. 41-11, 41-12]. While this evidence might be sufficient to establish that Harden was diligent in his efforts to interview Sturdivant. This, however, begs the question at hand. In order to expand the record, Harden must establish that he was diligent in attempting to *get the information* in Sturdivant's Affidavit before the state court.

As an initial matter, the information that police officers and one of the prosecutors assigned to the case came to the Pate home on more than one occasion to talk to Pate already is before this Court. Assistant District Attorney Thomas Porter testified at the MAR evidentiary hearing that he went to the Pate home several times, not only to speak to Pate, but also to interview Sturdivant, whom the State believed also might have witnessed the shootings. [State Ex. L: MAR Tr. at 384:10-386:13] (manually filed). Additionally, the Court has before it the information that Pate spent a good deal of time in the company of at least one police officer, A. E. Taylor. Therefore, with respect to that information, Sturdivant's Affidavit merely corroborates evidence already in the record.

As for the information that Frank Pate was taken to the police department and the courthouse for hours at a time, that evidence was available to Harden prior to or during post-conviction proceedings through Lorraine Pate, Frank Pate's mother. According to the Sturdivant Affidavit,

she was present at all of the meetings Frank Pate had at the police station and the courthouse. [Sturdivant Aff., Doc. 41-9 at ¶¶ 3, 6]. Harden does not contend that he was unable to locate or interview Lorraine Pate. Indeed, his MAR pleadings show that post-conviction counsel were in contact with her during post-conviction proceedings, that she allegedly had information relevant to Harden's Brady claim, and that they intended to subpoena her for the evidentiary hearing. [State's Ex. G: First Am. MAR at 53-54 n.31] (manually filed). Nevertheless, Harden did not call Lorraine Pate to testify at the hearing, and he does not contend that he was unable to do so. Consequently, Harden has failed to show that he "made a reasonable attempt, in light of the information available at the time, to investigate *and pursue* [this] claim[] in state court . . . ." Williams, 529 U.S. at 435, 120 S.Ct. at 1490 (emphasis added).

Because Harden has not satisfied the conditional clause of § 2254(e)(2), he must meet the remainder of the requirements set forth in that section. Harden, however, does not contend that the information in the Sturdivant Affidavit "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Furthermore, Harden cannot show clearly and convincingly that no reasonable factfinder would have found him guilty of two counts of first-degree murder absent the

9

alleged Brady violation.  See 28 U.S.C. § 2254(e)(2)(B).  Therefore, his motion to expand the record to include the Sturdivant Affidavit is denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Harden's Motion to Expand the Record to include the juror questionnaires from his trial [Doc. 38] is **GRANTED**, and his Motion to Expand the Record to include the Sturdivant Affidavit [Doc. 38] is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, the record be expanded to include the February 9, 1996 Memorandum from the Clerk of the North Carolina Supreme Court to Rick Glazier and Tom Ziko, Harden's appellate counsel.  [Doc. 77].

**IT IS SO ORDERED.**

Signed: September 7, 2010

Martin Reidinger
United States District Judge